UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CIVIL CASE NO: 8:20-CV-01497-WFJ-JSS

AL-ROB CORPORATION,
a Florida Corporation;
BANTOCK ENTERPRISES, LLC,
a Florida Limited Liability Company;
BLUE DIAMOND DOLLS, INC.,
a Florida Corporation;
FANTASY LAND ADULT CENTER OF
FLORIDA, INC., a Florida Corporation;
NEBRASKA STEAK COMPANY, LLC,
a Florida Limited Liability Company;
PRIMO FOOD & BEVERAGE, LLC,
a Florida Limited Liability Company;
SAMMY'S MANAGEMENT COMPANY, INC.,
a Florida Corporation; and
X-PRESSIONS ADULT BOUTIQUE, INC.,
a Florida Corporation,

                    PLAINTIFFS,

v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION; JOVITA CARRANZA
In her Official Capacity as Administrator of
the U.S. Small Business Administration,
and; STEVEN MNUCHIN, in his Official Capacity as
United States Secretary of the Treasury,

                    DEFENDANTS.

_____/

## AMENDED VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1.  This is a civil action brought by the Plaintiffs in order to obtain emergency declaratory and

    injunctive relief restraining Defendants from discriminating on the basis of the content of

1

speech and for damages resulting from discrimination that has already occurred. Plaintiffs seek to prevent Defendants from discriminating against workers who are entitled to benefit from the Paycheck Protection Program ("PPP") provisions of the recently-enacted Coronavirus, Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 §§ 1101- 03, 1107, 1114 (2020) (the "CARES Act"). The PPP is designed to quickly provide emergency relief to workers and businesses affected by the current COVID-19 pandemic following the President of the United States declaring a national emergency.

2.  However, the emergency regulations promulgated by the Small Business Administration to implement the PPP, which in part adopt existing regulations formulated to implement narrower, existing, loan programs, unconstitutionally deprive businesses and workers who are engaged in First Amendment protected expression from receiving benefits. The regulations and operating procedures conflict with the text of the PPP and violate businesses' and workers' fundamental rights under the First, Fifth and Fourteenth Amendments of the United States Constitution, among others.

## II. JURISDICTION AND VENUE

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346(a)(2) and (b)(2), 1361, and 2201.

4.  Authority for judicial review of agency action is further provided by 5 U.S.C. § 702, which states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered

2

against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5.  The jurisdiction of the Court to grant injunctive relief is conferred upon this Court by Rule 65 of the Federal Rules of Civil Procedure and by 28 U.S.C. § 2202, which provides: "Further necessary or proper relief on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

6.  The Middle District of Florida is the proper venue for this action because the Plaintiffs' claims arose primarily within the geographical boundaries of the Middle District of Florida within the meaning of 28 U.S.C. § 1391(b).

### III. PARTIES

#### Plaintiffs

7.  The Plaintiff, AL-ROB CORPORATION, INC., a Florida Corporation ("AL-ROB") is a fully licensed adult business located at 4715 North Lois Avenue, Tampa, FL 33614.

8.  The Plaintiff, BANKTOCK ENTERISES, LLC, a Florida Limited Liability Company ("BANTOCK") is a fully licensed adult business located at 437100 US Highway 19 North, Palm Harbor, FL 34684.

9.  The Plaintiff, BLUE DIAMOND DOLLS, INC., a Florida Corporation ("BLUE DIAMOND"), is a fully licensed adult business located at 16361 US Highway 19, Clearwater, FL 33764.

10. The Plaintiff, FANTASY LAND ADULT CENTER OF FLORIDA, INC., a Florida Corporation ("FANTASY"), is a fully licensed adult business located at 4715 North Lois Avenue, Tampa, FL 33614.

11. The Plaintiff, NEBRASKA STEAK COMPANY, LLC, a Florida Limited Liability Company, ("NEBRASKA") is a fully licensed adult business located at 5645 Bay Blvd., Port Richey, FL 34668.

12. The Plaintiff, PRIMO FOOD and BEVERAGE, LLC, a Florida Limited Liability Company ("PRIMO"), is a fully licensed adult business located at 105 Cortez Road West, Bradenton, FL 34207.

13. The Plaintiff, SAMMY'S MANAGEMENT COMPANY, INC., a Florida Corporation ("SAMMY'S"), is a fully licensed adult business located at 207 W. Romana St., Pensacola, FL 32502.

14. The Plaintiff, X-PRESSIONS ADULT BOUTIQUE, INC., a Florida Corporation (X-PRESSIONS"), is a fully licensed adult business located 3912 W. Hallendale Blvd., #I/J, Pembroke Park, FL 33009.

**Defendants**

15. Defendant, United States Small Business Administration (the "SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq*. The SBA maintains an office at 1101 Channelside Dr, Tampa, Florida, 33602.

16. Defendant Jovita Carranza ("Carranza," or the "Administrator") is the Administrator of the SBA, a Cabinet-level position, and is sued in her official capacity only, as the Administrator of the SBA.

4

17. Defendant, Steven Mnuchin, is the Secretary of the United States Treasury, and is sued in his

official capacity only, as the Secretary of the Treasury.

## IV. RELEVANT STATUTES AND REGULATIONS

18. Authority to sue the Administrator is granted by 15 U.S.C. § 634(b), which states, in part:

> In the performance of, and with respect to, the functions, powers, and duties vested
> in him by this chapter the Administrator may— (1) sue and be sued in any court of
> record of a State having general jurisdiction, or in any United States district court,
> and jurisdiction is conferred upon such district court to determine such
> controversies without regard to the amount in controversy . . . .

19. On March 27, 2020, to provide a much-needed jolt to the American economy, which had been

ravaged by COVID-19, President Trump and Congress collaborated to enact the Coronavirus

Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).

The purpose of the CARES Act was "to provide immediate assistance to individuals, families,

and businesses affected by the COVID-19 emergency." SBA Business Loan Program

Temporary Changes; Paycheck Protection Program at 4 (Interim Final Rule Apr. 2, 2020) (to

be codified at 13 C.F.R. pt. 120) (attached hereto as Exhibit "A").

20. The PPP provisions of the CARES Act instruct the SBA to promulgate rules as follows:

> SEC. 1114. EMERGENCY RULEMAKING AUTHORITY.
> Not later than 15 days after the date of the enactment of this Act, the Administrator
> shall issue regulations to carry out this title and the amendments made by this title
> without regard to the notice requirements under section 553(b) of title 5, Unites
> States Code.

21. The CARES Act tasks the SBA with administering the PPP. The PPP provides at 15 U.S.C. §

636(a)(36)(F)(ii):

> Delegated authority
>
> In general
> For purposes of making covered loans for the purposes described
> in clause (i), a lender approved to make loans under this subsection shall be deemed
> to have been delegated authority by the

Administrator to make and approve covered loans, subject to the provisions of this paragraph.

Considerations
In evaluating the eligibility of a borrower for a covered loan with the terms described in this paragraph, a lender shall consider whether the borrower--
(aa) was in operation on February 15, 2020; and
(bb)(AA) had employees for whom the borrower paid salaries and payroll taxes; or
(BB) paid independent contractors, as reported on a Form 1099-MISC.

(iii) Additional lenders
The authority to make loans under this paragraph shall be extended to additional lenders determined by the Administrator and the Secretary of the Treasury to have the necessary qualifications to process, close, disburse and service loans made with the guarantee of the Administration.

22. Pursuant to the PPP, the SBA did, in fact, promulgate regulations on April 1, 2020. A true and accurate copy of Business Loan Program Temporary Changes; Paycheck Protection Program, RIN 3245-AH34 (Interim Final Rule Apr. 1, 2020) ("SBA 3245"), as promulgated by the SBA, is attached hereto as Exhibit "B" and is hereby incorporated by reference.

23. SBA 3245 provides, in part:

Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible. SOP 50 10 can be found at

https://www.SBA.gov/document/sop-50-10-5-lender-development-companyloan-

programs

24. SBA 3245 further provides that PPP loans with be provided on a first-come, first-served basis until funds are exhausted. [*See* Ex. B, p.13]. The PPP had an original total monetary

limit of $349,000,000,000.00 ($349 Billion). As of June 30, 2020, media reports indicated that there were approximately $130 Billion in remaining funds.

25. A true and accurate copy of Business Loan Program, 60 Fed. Reg. 64356 *et seq.* (proposed Dec. 15, 1995; to be codified at 13 C.F.R. § 120.110), as promulgated by the SBA, is attached hereto as Exhibit "C" and is hereby incorporated by reference.

26. A true and accurate copy of SBA Business Loan Ineligible Businesses Rule, 13 C.F.R § 120.110 (2020), as actually enacted, is attached hereto as Exhibit "D" and is hereby incorporated by reference.

27. The SBA guarantees 100 percent of the loans provided through the PPP. Additionally, recipients *can qualify* for up to 100 percent loan forgiveness after applying for the forgiveness and the SBA approves the request. Ex. A at 3.

28. Loan recipients can use loans through the PPP to help pay the following costs:

    i.  Payroll costs;

    ii.  costs related to the continuation of group health care benefits during periods of paid sick, medical, or family leave, and insurance premiums;

    iii.  employee salaries, commissions, or similar compensations;

    iv.  payments of interest on any mortgage obligation (which shall not include any prepayment of or payment of principal on a mortgage obligation;

    v.  rent (including rent under a lease agreement);

    vi.  utilities; and

    vii.  interest on any other debt obligations that were incurred before the

covered period.

CARES Act, Pub. L. No. 116-136, §1102(a)(2)(F)(i), 134 Stat. 281 (2020).

29. Lenders can rely on certifications of borrowers to determine eligibility for loans under this program. Ex. A at 5.

30. The CARES Act proclaims that, "in addition to small business concerns, *any business concern*, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) shall be eligible to receive a covered loan . . ." CARES Act, Pub. L. No. 116-136, §1102(a)(1)(B)(2)(D)(i), 134 Stat. 281 (2020).

31. To be eligible for this program, a business must:

     i.   have 500 employees or less; and

    ii.   have a principal place of business is in the United States; or

   iii.   operate a business within a certain industry that meets the SBA's size standards for that industry; and

   iv.   have been in operation on February 15, 2020 and had employees or independent contractors that the business was paying;

32. Entities that are eligible for PPP include sole proprietorships, Non-profit entities that are organized under 501(c)(3) of the Internal Revenue Code, tax-exempt veterans entities organized under 501(c)(19) of the Internal Revenue Code, and Tribal businesses organized under Section 31(b)(2)(C) of the Small Business Act. Ex. A at 5-6.

33. 13 C.F.R § 120.110 provides, in part: the following types of Businesses are ineligible:

                *        *        *

(p) Businesses which:
Present live performances of a prurient sexual nature; or
Derive directly or indirectly more than de mimimis gross

revenue through the sale of products or services, or the presentation of any depiction or display, of a prurient sexual nature;

34. The provisions set out in the immediately preceding Paragraph are hereinafter referred to simply as the "Regulations."

35. A true and accurate copy of the relevant portion of SBA Standard Operating Procedure 50 10 5(K) – Lender and Development Company Loan Programs (Apr. 1, 2019), is attached hereto as Exhibit "E" and hereby incorporated by reference.

36. The SBA Standard Operating Procedure 50 10 5(K) – Lender and Development Company Loan Programs (Apr. 1, 2019) provides, in part, at Ch.2 (III)(A):

15. Businesses Providing Prurient Sexual Material (13 CFR § 120.110 (p))

a. A business is not eligible for SBA assistance if:
It presents live or recorded performances of a prurient sexual nature; or

It derives more than 5% of its gross revenue, directly or indirectly, through the sale of products, services or the presentation of any depictions or displays of a prurient sexual nature.

b. SBA has determined that financing lawful activities of a prurient sexual nature is not in the public interest. The Lender must consider whether the nature and extent of the sexual component causes the business activity to be prurient.

c. If a Lender finds that the Applicant may have a business aspect of a prurient sexual nature, prior to submitting an application to the LGPC (non-delegated) or requesting a loan number (delegated), the Lender must document and submit the analysis and supporting documentation to the Associate General Counsel for Litigation at PSMReview@SBA.gov for a final Agency decision on eligibility. Upon approval by SBA, the Lender may submit the application to the LGPC or may proceed to process the loan under its delegated authority. A non-delegated Lender must submit a copy of SBA's approval with the application to the LGPC. A delegated Lender must retain its analysis, supporting documentation, and evidence of SBA's approval in its loan file and must submit the analysis and supporting documentation to SBA with any request for guaranty purchase. SBA also may review such documentation when conducting Lender oversight activities.

(These provisions are hereinafter referred to as "SOP.")

37. Defendant SBA is responsible for formulating, issuing, and enforcing the Regulations and the SOP.

38. A true and accurate exemplar copy of the SBA Paycheck Protection Program Borrower Application Form 2483 submitted by each Plaintiff to their corresponding lender as delegee of the SBA are attached hereto as follows:

Exhibit "F," AL-ROB's Application,

Exhibit "G," BLUE DIAMOND's Application,

Exhibit "H," BANTOCK's Application,

Exhibit "I," FANTASY's Application.

Exhibit "J," NEBRASKA's Application,

Exhibit "K," PRIMO's Application

Exhibit "L," SAMMY's Application

and Exhibit "M," X-PRESSIONS's Application, all of which are attached hereto and incorporated herein by reference.

## V. ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

39. Plaintiffs are establishments that are open to the consenting adult public, licensed by their respective counties and municipalities, to operate adult entertainment related businesses, such as "Gentlemen's Clubs" and "Adult Book Stores" which feature non-obscene erotic materials and performances.

40. All of the entertainment and materials provided by Plaintiffs are non-obscene and, as opposed to anything of a "prurient" nature, the live entertainment and/or materials offered by all Plaintiffs appeals to a healthy interest in basic human sexuality, in full compliance with the numerous licenses and permits that are held by the Plaintiffs, all of which have

been reviewed by Plaintiffs' respective municipal and county authorities and renewed annually.

41. It is the sound belief of the Plaintiffs that because their performances and/or materials have been and are intended to be exclusively aimed at a normal and healthy interest in a normal and healthy sexual interest, none of these matters can fairly be said to be of a prurient nature or to appeal to a prurient interest in sexuality, as the word "prurient" is properly understood as a legal term of art. See *Brocket v. Spokane Arcades, Inc.,* 472 U.S. 491, 105 S.Ct. 2794 (1985).

42. Under *Brocket* and its antecedent cases, it has been established in American law that, with respect to entertainment and expression, an appeal to a "prurient" interest means an appeal to a shameful or morbid interest rather than a normal or healthy interest in sex.

43. On information and belief, the Defendants presently disagree and consider such performances as the erotic dance which has been and will be presented by the Plaintiffs to appeal to a prurient interest merely because such presentation are aimed at even healthy erotic attraction, and, on information and belief, those defendants intend to deny <u>or to so delay the processing of the</u> Plaintiffs' applications for loan benefits under the PPP program <u>as to amount to a denial as a practical matter</u> for solely that reason.

44. Indeed, the current extension of the deadline to August 8, 2020 for the SBA to administer such applications, thus making this action fully ripe and at issue.

45. Ronald DeSantis, Governor of Florida, issued "Executive Order in Response to COVID-19" (EO#20-68), closing all "non-essential" an "amusement" locations to cease operations as of March 17, 2020. Multiple Executive Orders have followed, all of which resulted in the closure of Plaintiffs' businesses and the predicate entitlement to the emergency relief for which the PPP was enacted.

11

46. Plaintiffs have been closed for business since March 17, 2020 and were shuttered as a result of the above described Executive Orders.

47. As a direct and proximate result of such state-ordered closure, the Plaintiffs have suffered significant business losses, but hope to reopen when legally permitted to do so, if Plaintiffs can survive without incoming business revenue, including maintaining the financial obligations to open and operate their premises which they are presently unable to do because of the total lack of any revenuer, until the aforesaid restrictions are lifted and the Plaintiffs are permitted to resume operations.

48. In order to mitigate their business losses and to provide monetary relief to their employees – since at least 75% of PPP loans are to be used for employee wages, the Plaintiffs determined to apply for a PPP loan.

49. Plaintiffs' applications were correctly and completely filled out and all necessary documentation was attached and provided well in advance of the prior June 30, 2020 deadline to the Plaintiffs' local banks, where Plaintiffs conducted their banking business.

   a. To Wit: On March 27, 2020, NEBRASKA STEAK COMPANY submitted its application. See Exhibit "J."

   b. On April 4, 2020, SAMMY'S MANAGEMENT COMPANY, INC. submitted its application. See Exhibit "L."

   c. On April 30, 2020 PRIMO FOOD & BEVERAGE, LLC, submitted its application. See Exhibit "K."

   d. On May 6, 2020, X-PRESSIONS, submitted its application. See Exhibit "M."

   e. On May 7, 2020, FANTASY LAND ADULT CENTER OF FLORIDA, submitted its application. See Exhibit "I."

  f. On May 7, 2020, AL-ROB CORP. submitted its application. See Exhibit "F."

  g. On May 26, 2020 BANTOCK ENTERPRISES, submitted its application. See Exhibit "H."

  h. On June 9, 2020, BLUE DIAMOND DOLLS, INC. submitted its application. See Exhibit "G."

50. Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), the respective banks operate as delegates of the SBA in the processing and approval or disapproval of the PPP loans sought by Plaintiffs.

51. The Plaintiffs are fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

52. As it pertains to all Plaintiffs, their banking institutions indicated, primarily over the phone, that the submitted applications would be denied due to the nature of their business based on the SBA restrictions described above. Subsequent requests for reconsideration the denials went completely unheeded.

53. The Plaintiffs have learned that numerous other similar businesses, which present non-obscene female performance dance entertainment of an "exotic," "topless" or fully nude variety, have had their applications for PPP loans *rejected* by their SBA lending banks, based on their banks' stated belief that the business is disqualified by the Regulations and/or the SOP.

54. In contrast, and based on irreconcilable inconsistencies, the SBA has *approved* many Gentlemen's Clubs and other "adult" oriented establishments for PPP benefits.

55. Specifically, the Plaintiffs have learned that other similar establishments have had their applications for PPP loans rejected on the belief that the clubs present "live performances of a prurient sexual nature" within the meaning of 13 C.F.R. § 120.110(p).

56. There are currently two other cases known to Plaintiffs where complaints for declaratory and injunctive relief have been filed by Gentlemen's Clubs seeking the same SBA PPP benefits at issue herein, on the same legal bases asserted herein.

57. The first of the cases is *DV Diamond Club of Flint, LLC, etc., v. United States Small Business Administration, et al*, Case No.: 4:20-cv-10899-DRG, United States District Court, Eastern District of Michigan, Southern Division. On May 11, 2020, the district court entered a preliminary injunction in favor of the Plaintiffs and Intervenors. *D.V. Diamond Club of Flint v. United States Small Business Administration*, Case No. 20-cv-10899 MFL, Slip Opinion and Order Granting Plaintiffs' and Intervenors' Motion for A Preliminary Injunction, Docket No. 42 (E.D. Mich., May 11, 2020). The Eastern District of Michigan determined that Congress did not intend the SBA's "prurience" restrictions to stand in the way of relief under the PPP Program:

> Congress intended that the SBA would make the PPP loan guarantees widely available to small businesses across the commercial spectrum. Indeed, Congress was aware that the SBA had historically declared certain classes of businesses ineligible for SBA lending, and Congress set about to "[i]ncrease[] [e]ligibility" for PPP loan guarantees. 15 U.S.C. § 636(a)(36)(D). Congress did that by establishing only two criteria for PPP loan guarantee eligibility and providing that "*any* business concern … *shall* be eligible" for a PPP loan guarantee if it met those criteria. 15 U.S.C. § 636(a)(36)(D)(i) (emphasis added). . . Despite this direction from Congress, the SBA adopted a rule excluding from PPP loan guarantee eligibility a wide range of businesses – including banks, political lobbying firms, certain private clubs with restrictive admissions practices, and sexually oriented businesses that present entertainment or sell products of a "prurient" (but not unlawful) nature (the "PPP Ineligibility Rule"). While Congress may once have been willing to permit the SBA to exclude these businesses from its (the SBA's) lending programs, that willingness evaporated when the COVID-19 pandemic destroyed the economy and threw tens of millions of Americans out of work. Simply put, Congress did not pick winners

14

and losers in the PPP. Instead, through the PPP, Congress provided temporary paycheck support to *all* Americans employed by *all* small businesses that satisfied the two eligibility requirements – even businesses that may have been disfavored during normal times. Thus, the SBA's PPP Ineligibility Rule is invalid because it contravenes the PPP.

Id. at 2-3. Thus, the district court avoided determining the constitutional issues alleged in that case, similar or identical to the contentions herein alleged, determining the requested relief on exclusively statutory grounds, while granting full relief to the Plaintiffs.

58. The case was appealed (Sixth Circuit Case No. 20-1437), and the SBA sought a stay, which was denied on May 15, 2020. The SBA has asked the Sixth Circuit to hold the case in abeyance as of June 29, 2020.

59. The second of these cases is *Camelot Banquet Rooms, Inc., et al v. United States Small Business Administration et al*, Case No.: 2:20-cv-00601-LA.  On the day it as filed, the Court issued a Temporary Restraining Order, requiring the SBA to administer the Plaintiffs Clubs' applications and ordering hat the applications be placed in the "queue" so they would be on equal footing with other businesses whose application had not been delayed.

60.    On May 1, 2020, the Court issued a Decision and Order, granting the Preliminary Injunction. On constitutional grounds similar or identical to the contentions herein alleged, *infra*, the Court ordered:

the SBA and the Secretary of the Treasury…including the SBA's lending banks, are preliminarily enjoined from using 13 C.F.R. Sec. 120.110(p) and the associated SAB Standard Operating Procedures (SOP 50 10 5 (k) Sec. III.A,15) in making eligibility determinations for loans under 15 U.S.C. Sec. 636(a)(36). By Monday, May 4, 2020, the Administrator of the U.S. Small Business Administration and the Secretary of the Treasury shall transmit guarantee authority to the Plaintiffs' lenders so that those lenders may finish processing the Plaintiffs' applications for PPP loans and immediately fund the loans."

61. Again, in the *Camelot Banquet* case, an appeal was taken by the SBA (Seventh Circuit Case No. 20-1729), and a stay was sought. The Seventh Circuit denied the stay on May 20,

2020. As of July 1, 2020, the Seventh Circuit has issued a briefing schedule requiring the SBA's Initial Brief on July 30, 2020.

62. The funds allocated for PPP loans are being extended on a first-come, first-served basis until the funds are exhausted, which has previously occurred, and is destined to occur again unless this Court grants relief to the Plaintiffs.

63. Plaintiffs fear that the customs and practices exhibited by the SBA in similar actions, the nature of the Regulations and the SOP, and the clear delays and obfuscation exhibited by the SBA in what should be a comparatively simple ministerial process, will cause their applications to be delayed until all PPP loan funds are exhausted, rendering any pending or later request for judicial relief to be moot.

64. In fact, the original money funding the SBA PPP benefits, some $349 Billion for distressed businesses earmarked by Congress for PPP benefits was exhausted, resulting in the denial of the applications pending when the funds ran out.

65. The SBA PPP fund was then replenished on April 24, 2020, for another $321 Billion, so the aspect of funds disappearing as time passes makes this matter ripe for the issuance of a preliminary injunction.

66. The SOP provides that if the "Lender finds that the Applicant may have a business aspect of a prurient sexual nature" the lender is to email the SBA for a "final Agency decision on eligibility."

67. Given the pressures and workload placed on the SBA by the CARES Act and the COVID-19 pandemic, the Plaintiffs reasonably fear that no agency decision will be forthcoming while PPP funds remain, or that the SBA will decide that Plaintiffs are not eligible when there is no time for them to obtain relief while PPP funds still remain.

68. In the event that Plaintiffs are unable to obtain PPP loans, it is quite likely to lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of their businesses, the inability of Plaintiffs to engaged in protected First Amendment activity, the inability of Plaintiffs' staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity, and the full, final, and permanent loss of these venues of free expression.

69. In asserting their First Amendment challenges to the Regulations and SOP, Plaintiffs assert not only their own rights but also the rights of their customers and employees, and the entertainers who perform on their premises.

## VI. VIOLATIONS OF LAW

### COUNT I

**Violation of the Free Speech Clause
of the First Amendment to the U.S. Constitution**

70. Plaintiffs incorporates by reference paragraphs 1-69 as if fully restated herein.

71. Statutes that regulate activity based upon the content of the speaker's speech are presumptively unconstitutional. *Reed v. Town of Gilbert*, 135 S. Ct. 2218 at 2226 (2015). A regulation is content-based if it requires enforcement authorities to examine the content of the message that is conveyed to determine whether an applicant for PPP benefits shall be denied, resulting in a loss of benefits for "disaster relief" that encompasses ***all*** affected small businesses.

72. When a statute imposes a regulation that is based on the content of the speaker's speech, it is of no constitutional significance whether the statute is a complete prohibition or a limitation. The statute is still presumptively unconstitutional and subject to strict scrutiny.

17

73. On their face, the SBA's regulations and conduct are susceptible to an interpretation that would deny Plaintiffs benefits under the PPP program, presumably on the concept of a finding that its loans are not eligible for "Businesses that present live performances of a prurient sexual nature" or derive "directly or indirectly more than *de mimimis* gross revenue through the sale" of items of a prurient sexual nature." 13 C.F.R. § 120.110(p) if "prurient sexual nature" is construed to include performances that apply to a normal and healthy interest in eroticism and sexuality.

74. The SBA's Adult Business Restriction constitutes a content-based speech ban (likely to cause the permanent cessation of the operation of Plaintiffs' affected businesses) because, to enforce it, the SBA must look to the contents of Plaintiffs' performances, speech, and/or media.

75. The SBA does not have a compelling interest to prohibit Plaintiffs' otherwise eligible small businesses from obtaining loans under the PPP. In fact, neither the SBA nor the government of the United States *have any legitimate interest at all* in denying otherwise generally-available benefits to businesses merely because they present performances appealing to a normal and healthy interest in sexuality.

76. Furthermore, the SBA's means—a complete prohibition—are not narrowly tailored. Less intrusive means other than a complete ban do exist.

77. Accordingly, the SBA's Restriction found in 13 C.F.R. § 120.110(p) is an unconstitutional content-based speech prohibition.

78. The statute contemplates that, in the absence of this kind of relief, the current economic situation will cause the destruction of affected businesses. The policy of the SBA alleged herein works as a closure of the affected businesses by denying them the kind of emergency

relief extended to virtually all other lawful small, American businesses based "pure and simple" on the kind of expression they convey and the Defendants intend, on information and belief in light of the facts and circumstances known to the SBA, the destruction of the applicant businesses and the cessation of the kind of live entertainment and expressive materials they provide, to the extent of the power of the SBA to effect.

79. It is clearly not the intent of Congress in enacting the PPP Program to subsidize or encourage any particular kind of expression, speech, or business enterprise, but instead to advance exclusively economic goals, to broadly and boldly advance the aim of saving essentially all American small businesses and the jobs they provide to working Americans, without preference, favor, discrimination, selection, or exclusion based on their expression. In the context of such broad economic relief to the widest segment of small businesses, it is beyond the constitutional power of Congress to do otherwise, and it is beyond the power of the Defendants to so regulate.

## <u>COUNT II</u>

### Violation of the Due Process Clause
### of the Fifth Amendment to the U.S. Constitution

80. Plaintiffs incorporates by reference paragraphs 1-69 as if fully restated herein.

81. Under the statute and regulations previously alleged herein, the defendants have been authorized to create and administer a program of general economic relief, widely available to a large and nearly universal class of small and medium-sized businesses, excepting and disparately and adversely excluding only a small, limited, and fragmentary portion of those businesses.

82. It is the aim of the program established under the statute and regulations to save and preserve the operations of a wide and general class of such businesses during the present

pandemic against the sure knowledge that a substantial portion of them, without such relief, will be unable to survive as viable businesses as a result of the pandemic.

83. This complaint deals with the adverse and disparate exclusion of Plaintiffs, which, on information and belief, the SBA will deny benefits which will cause the economic destruction of the Plaintiffs' businesses while assisting the future survival and prosperity of the large majority of small and medium-sized businesses in the United States which do not provide similar content of expression.

84. The Defendants, on information and belief, have so accordingly attempted to craft and engineer their improper and unconstitutional policy of economic exclusion against adult-oriented businesses by excluding any such businesses as may provide what they now call "prurient" products or entertainment, despite the established meaning of that term in American jurisprudence as a legal term of art in the law of expression and entertainment, applying only to "shameful or morbid" presentations, none of which occur at, or are provided by, Plaintiffs' establishments.

85. This result is a content-based discrimination aimed at the economic destruction of such businesses during a prolonged period during which the Plaintiffs are prohibited by law and government regulation from performing their business of conducting public performances or public dissemination of First Amendment protected materials.

86. The PPP program here at issue was not intended as a subsidy to any select program or programs, but as a broad from of relief intended to benefit all businesses of a certain size unless particularly excluded.

87. The Due Process Clause of the Fifth Amendment declares that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend.

V. Included within the Fifth Amendment's Due Process Clause are the same equal protection principles contained in the Fourteenth Amendment's Equal Protection Clause.

88. The injury in fact in an equal protection case of this variety is the denial of equal treatment of Plaintiffs and access to the PPP benefits at issue herein because of the nature of their speech.

89. SBA's PPP benefits are available to all businesses, including 501(c)(3) nonprofits, veterans' organizations, and faith based groups. But, as shown herein and on information and belief, the SBA prevents businesses that engage primarily in "adult" activity from obtaining these loans. 13 C.F.R. § 120.110(p).

90. Here, the SBA's Restriction in 13 C.F.R. § 120.110(p) treats differently those who are exercising their constitutional right to free speech from those who are not. In fact, those exercising the constitutional rights described herein are completely prohibited from obtaining these PPP loans. Other small businesses are not.

91. This is an unconstitutional distinction prohibiting those who exercise fundamental constitutional rights from obtaining much needed loans while allowing those who do not exercise fundamental constitutional rights to obtain them. This improperly violates the equal protection component of the Fifth Amendment's Due Process Clause.

92. Like other small businesses that are coping with the economic impact of COVID-19, Plaintiffs are in dire need of an infusion of funds. They are otherwise eligible for loans through the PPP. The SBA prohibits Plaintiffs from obtaining this necessary cash infusion because Plaintiffs exercise their fundamental constitutional rights. This violates the equal protection component of the Fifth Amendment.

93. The Equal Protection Clause requires that statutes affecting First Amendment interests

be narrowly tailored to their legitimate objectives.

94. A complete prohibition of adult-oriented businesses is not narrowly tailored. The government does not have a legitimate interest during this global pandemic in preventing small businesses from obtaining much needed cash to cover payroll and health insurance for their employees just because these small businesses exercise fundamental constitutional rights.

95. The Regulations and the SOP violate and are contrary to the First Amendment of the United States Constitution, on their face and as applied to Plaintiffs, for numerous reasons including but not limited to:

    a.   They are impermissible content-based restrictions on expression that do not pass muster under either strict scrutiny or intermediate scrutiny;

    b.   They treat the performances and content sold at Plaintiffs' establishments as though they were obscene, and in so doing, fail to conform to the constitutional standards by which obscenity is defined and regulated;

    c.   They violate the doctrine of unconstitutional conditions; and

    d.   They are unconstitutionally vague under the vagueness standards for matters impacting speech and expression.

96. The Regulations and the SOP violate and are contrary to the Fifth Amendment of the United States Constitution, on their face and as applied to Plaintiffs, for numerous reasons including but not limited to:

    a.   They treat establishments presenting certain forms of performance dance entertainment, such as Plaintiffs, differently and disparately without lawful justification

22

from establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

b.  They treat workers at establishments presenting certain forms of performance dance entertainment, such as those operated by the Plaintiffs, differently from workers at establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

c.  They violate the rights of Plaintiffs, their employees, and the entertainers who perform on their premises under the occupational liberty component of the Fifth Amendment; and

d.  They are impermissibly vague.

97. Because it is clear and unambiguous as to which businesses are eligible for PPP loans under the CARES Act, including the Plaintiffs, the SBA lacked authority to promulgate regulations with restricted or otherwise "clarified" what businesses were eligible for PPP Loans.

## COUNT III

### The Invalidity Of The Regulations And SOP

98. Plaintiffs incorporate herein by reference paragraphs 1-69, above as though fully set forth herein.

99. Because it is clear and unambiguous as to which businesses are eligible for PPP loans under the CARES Act, including the Plaintiffs, the SBA and its Administrator lacked authority to promulgate regulations with restricted or otherwise "clarified" what businesses were eligible for PPP Loans in the manner the Plaintiffs have done, to the exclusion of the Plaintiffs from those benefits.

100.     The Regulations and the SOP, if understood to exclude businesses providing entertainment of a nature that appeals to a natural and healthy interest in sex from the benefits of the PPP Program, fail to serve any legitimate regulatory purpose entrusted to the SBA or its Administrator regarding the PPP provision of the CARES Act or otherwise.

101.     The SBA or its Administrator failed to articulate a sufficient regulatory purpose for promulgating the Regulations or the SOP, either in general or specifically as to the PPP provisions of the CARES Act, insofar as they work to exclude businesses providing entertainment of a nature that appeals to a natural and healthy interest in sex.

102.     As a direct and proximate result of the invalid portions of the Regulations and SOP and the Defendants' and their delegates' application of the Regulations and the SOP against Plaintiffs and their interests, Plaintiffs, their employees, the entertainers who perform on Plaintiffs' premises, and the general public have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin, business ruination, and the permanent loss of the Plaintiffs' venue of expression.

103.     By their promulgation of the Regulations and Standard Operating Procedures herein alleged, *supra*, to the extent that the contents of those Regulations and Standard Operating Procedures work to exclude businesses providing entertainment that appeals to a natural and healthy interest in sex from the benefits of the PPP Program, the Defendants have, a) invalidly exceeded their authority to regulate under the CARES Act, b) invalidly and without power to do so defied the manifest intention of Congress expressed in the enactment of the CARES Act, c)  acted without valid, germane, or reasonable findings or determinations of fact and without a constitutionally permissible purpose, and d) otherwise violated the First and Fourteenth Amendments to the United States Constitution.

## VII. DAMAGES

104.     As a direct and proximate result of the unconstitutional aspects of the Regulations and SOP related to PPP Loans, and the Defendants' and their delegates' application of the Regulations and the SOP against Plaintiffs and their interests, the Plaintiffs, Plaintiffs' employees, and the entertainers who perform on Plaintiffs' premises have suffered and will continue to suffer irreparable injuries, including but not limited to financial ruin, business ruination, and the inability to present and provide First Amendment protected entertainment.

105.     As a direct and proximate result of the invalid portions of these Regulations and SOP and the Defendants' and their delegates' application of the Regulations and the SOP against Plaintiffs and their interests, Plaintiffs' employees, and the entertainers who perform on Plaintiffs' premises have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin and business ruination.

## VIII. CONDITIONS PRECEDENT

106.     All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## DEMAND FOR A JURY TRIAL

107.     A jury trial is demanded for all issues so triable.

## IX. PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that the Court grant judgment against the Defendants as follows:

108.     Pursuant to 28 U.S.C. §§ 2201 and 2202, declare unconstitutional the Paycheck Protection Program's Adult Business Restriction contained in 13 C.F.R. § 120.110(p), as

applied to Plaintiffs because the Adult Business Restriction violates the First, Fifth, and Fourteenth Amendments to the U.S. Constitution.

109.     In the alternative, pursuant to 28 U.S.C. §§ 2201 and 2202, declare that use of the word "prurient" in any of the regulations at issue herein be construed as having the same meaning and definition as determined by prior decisions of the United States Supreme Court, and inapplicable to lawfully operating and licensed commercial stores and Gentlemen's Clubs presenting presumptively protected First Amendment materials and dance performances, such as Plaintiffs.

110.     Issue orders granting a TRO, a Preliminary Injunction, and Permanent Injunction enjoining the Defendants, as well as their employees, agent and representatives, including the SBA's lending banks, from enforcing or utilizing in any fashion or manner whatsoever, 13 C.F.R. § 120.110(p) and SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) to deny the Plaintiffs' loan applications were made pursuant to the Payroll Protection Program of the CARES Act and otherwise mandating the preservation of sufficient funds to satisfy the PPP Program loan application of the Plaintiffs until such funds are disbursed to it, mandating also that such funds shall not be distributed or otherwise disbursed to anyone other than the Plaintiffs without the prior Order of this Court;

111.     As part of those orders, order the Defendants, as well as their employees, agent and representatives, to notify, as expeditiously as possible, all SBA lending banks to immediately discontinue utilizing 13 C.F.R. § 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) as criteria for determining PPP loan application eligibility, and to fully process all PPP loan applications without reference to such regulations and procedures;

112.    As a further part of those orders, order the Defendants, as well as their employees, agent and representatives, including the SBA's lending banks, to restore Plaintiffs to their place in the application queue as they were at the time of application in the event that their applications have already been formally denied, derailed, or paused because of the challenged regulations and procedures challenged here;

113.    Award monetary damages in amounts that will fairly compensate the Plaintiffs for their injuries; and

114.    Award Plaintiffs reasonable attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Award all other relief that this Court deems just and necessary.

Date: July 20, 2020                              Respectfully submitted,

                                                 Respectfully Submitted,

                                                 /s/Luke Lirot_____
                                                 Luke Lirot, Esq.
                                                 Florida Bar Number 714836
                                                 Sean X. Colon, Esq.
                                                 Florida Bar Number 1010686
                                                 LUKE CHARLES LIROT, P.A.
                                                 2240 Belleair Road, Suite 190
                                                 Clearwater, Florida 33764
                                                 Telephone: (727) 536-2100
                                                 Facsimile: (727) 536-2110
                                                 *Attorney for Plaintiffs*
                                                 luke2@lirotlaw.com  (primary e-mail)
                                                 sean@lirotlaw.com  (secondary e-mail)
                                                 krista@lirotlaw.com (secondary e-mail)