# EXHIBIT "C"



# ~~Proposed Rules~~

Federal Register

Vol. 60, No. 241

Friday, December 15, 1995

---

This section of the FEDERAL REGISTER contains notices to the public of the proposed issuance of rules and regulations. The purpose of these notices is to give interested persons an opportunity to participate in the rule making prior to the adoption of the final rules.

---

## SMALL BUSINESS ADMINISTRATION

### 13 CFR Parts 108, 116, 120, 122, 131

### Business Loan Programs

**AGENCY:** Small Business Administration (SBA).

**ACTION:** Proposed rule.

**SUMMARY:** In response to President Clinton's government-wide regulatory review directive, SBA has completed a page-by-page and line-by-line review of all of its existing regulations. SBA determined that it could eliminate some regulations and consolidate, clarify, and simplify the remainder. This proposed rule consolidates five current CFR parts into one Part to be known as Part 120. The surviving Part 120 covers virtually all policies and regulations, other than size standards, applicable to SBA's business (non-disaster) loan programs. Almost all provisions have been reworded, renumbered, and relocated. There are a few new or revised policies. Several sections have been deleted. However, most of the revisions merely streamline and clarify the regulations and do not represent substantive change.

**DATES:** Comments must be submitted on or before January 16, 1996.

**ADDRESSES:** Address written comments to David R. Kohler, Associate General Counsel for General Law, (120) Small Business Administration, 409 3rd Street S.W., Washington, D.C. 20416.

**FOR FURTHER INFORMATION CONTACT:** Ronald Matzner, Associate Deputy General Counsel; Office of General Counsel, at (202) 205-6882.

**SUPPLEMENTARY INFORMATION:** On March 4, 1995, President Clinton directed all federal agencies to conduct a page-by-page, line-by-line review of their existing regulations to determine which could be eliminated or streamlined. The President's directive complemented SBA's ongoing reinvention effort, which had already targeted portions of the business loan programs for streamlining and simplification. From its review of its business loan programs, SBA is proposing to eliminate many pages of business loan regulations and consolidate and simplify the remainder.

The proposed rule combines Parts 108, 116, 120, 122 and 131 of 13 CFR into one new Part to be known as Part 120. The new Part 120 will regulate all of SBA's non-disaster financial assistance to small businesses under its general business loan program ("7(a) loans"), its microloan demonstration program ("Microloans"), and its development company program ("504 loans").

Many repetitive and overlapping sections from the current regulations will be eliminated. The remaining provisions will be easy to find and easy to understand. Formerly, provisions applicable to a business loan program were often located in different Parts. Sometimes unintended differences developed between the loan programs in the interpretation or implementation of similar program policies because of minor inconsistencies in the language of the provisions in the several Parts. These inconsistencies have been eliminated.

In the proposed rule, the basic requirements that apply to all of the business loan programs are located in subpart A. These include elements currently found in portions of Parts 108, 116, and 120. Policies specific to a particular program are in the separate subpart applying to that program. Rules specific to 7(a) loans will be in subpart B and include elements currently in portions of Parts 116, 120, and 122. Regulations applying to SBA's special purpose loans currently in Part 122 and a portion of Part 116 will be in subpart C. Subparts D, E, and F will contain rules regarding lenders, program administration, and the secondary market currently found primarily in Part 120. The loan moratorium provisions presently in Part 131 will also be in subpart E. Subpart G will contain rules specific to Microloans currently in Part 122. Finally, regulations applying only to 504 loans currently located in Part 108 will be in subpart H. The following

| Subpart | Subject matter covered | Section numbers |
|---|---|---|
| Introduction | Overview of Part 120; definitions. | 120.1 to 120.99. |
| A | Policies applicable to all business loans. | 120.100 to 120.199. |
| B | Loanmaking policy specific to Guarantees and Direct 7(a) Loans. | 120.200 to 120.299. |
| C | Special Purpose Loans. | 120.300 to 120.399. |
| D | Lenders. | 120.400 to 120.499. |
| E | Loan Administration. | 120.500 to 120.599. |
| F | Secondary Market. | 120.600 to 120.699. |
| G | Microloan Demonstration Program. | 120.700 to 120.799. |
| H | Development Company Loan Program (504). | 120.800 to 120.899. |

The most noticeable change in the proposed regulation is in the format. The rule is written in a "user-friendly", "plain-language" style. Provisions have been grouped in logical sequences. Descriptive headings make it easier to find sections. Hyphenated section numbers are no longer used. Questions and answers are sometimes used. Wherever possible, ordinary language is used instead of "government-speak".

SBA's intent was to write regulations that provide easy-to-comprehend notice of the general content of a policy, rather than detailed information explaining or expounding upon that policy. Much explanatory material currently in the regulations and used primarily by SBA personnel to implement SBA's programs has been eliminated from the proposed rule, but is available to the public and may be found in SBA policy guidances, Standard Operating Procedures ("SOPs"), and other SBA materials.

Most of the revisions do not represent policy changes. In many cases, the wording of the regulation has been changed to conform to actual conduct. Although SBA is not aware of any instances, SBA requests comments regarding any inadvertent substantive changes which may have been caused by rewording and format changes.

**EXHIBIT C Page 1**

**64360** Federal Register / Vol. 60, No. 241 / Friday, December 15, 1995 / Proposed Rules

whether the prohibition extends to businesses principally engaged in promoting religion through their activities. Nonetheless, such businesses in the past have been found to be ineligible.

SBA's primary focus is to provide financial assistance to for-profit small businesses that can contribute to job growth and economic development in the United States. Within the limits set by the Establishment Clause of the Constitution, SBA does not disqualify otherwise eligible small businesses from receiving financial assistance merely because they offer religious books, articles, or other products for sale or because they support or encourage moral and ethical values based upon religious beliefs. At the same time, SBA does not make financial assistance available to religious entities or their affiliates for use in directly promoting or teaching religion.

The Establishment Clause of the First Amendment, which states "Congress shall make no law respecting an establishment of religion," serves as a limitation on governmental activities with regard to religion. The Establishment Clause primarily proscribes "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Walz* v. *Tax Commission*, 397 U.S. 664, 668 (1970). "Neither a state nor the Federal Government * * * can pass laws which aid one religion, aid all religions, or prefer one religion over another * * * No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion." *Everson* v. *Bd. of Educ.*, 330 U.S. 1, 15–16 (1947); see also *Grand Rapids School Dist.* v. *Ball*, 473 U.S. 373, 381 (1985) (quoting this language); *McCollum* v. *Bd. of Educ.*, 333 U.S. 203, 210 (1948) (same).

Under the proposed rule, SBA would not provide financial assistance to businesses principally engaged in teaching, instructing, counseling, or indoctrinating religion or religious beliefs. While incidental or indirect support of religious objectives might be permissible, SBA would not provide financial assistance to a newspaper, broadcasting business, day care center, or private school principally engaged in such activities.

Some of the more difficult eligibility inquiries received by SBA field offices have involved businesses which engage in activities in a secular setting which may be considered to be religious in nature. The U.S. Supreme Court has held that aid used to fund specifically religious activities in an otherwise substantially secular setting, has the primary effect of advancing religion, and therefore violates the Establishment Clause. *Hunt* v. *McNair*, 413 U.S. 734 (1973); *Bowen* v. *Kendrick*, 487 U.S. 589, 613 (1988). The facts of each situation must be carefully examined. With the above Supreme Court standard in mind, SBA proposes to include among ineligible businesses those principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs, whether the setting is religious or secular, because, in SBA's view, financial assistance to such small businesses would violate the Establishment Clause.

SBA field office personnel and others also have sought guidance on the eligibility of small businesses which sell sexually oriented products or services, or engage in sexually oriented activities. The present regulation is silent regarding obscene, pornographic, or sexually oriented activities. A business engaging in any such activity that is illegal is ineligible under § 120.110(h) of this regulation. However, SBA receives inquiries regarding businesses engaged in activities which, while not illegal, may be considered by the average person to be obscene or pornographic.

"Obscene" material is not protected by the First Amendment. It has been defined by the United States Supreme Court in the context of a criminal case, *Miller* v. *California*, 413 U.S. 15, 24 (1973), as follows: "* * * whether a work which depicts or describes sexual conduct is obscene is [determined by] whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest, whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." Under Supreme Court precedent, "[w]hen the government appropriates funds to establish a program, it is entitled to define the limits of that program." *Rust* v. *Sullivan*, 114 L.Ed.2d 233, 256 (1991). In implementing its programs, SBA must also follow the Congressional mandate set forth in Section 4(d) of the Small Business Act (15 U.S.C. 633(d)) ("the Act") to consider the public interest in granting or denying an application for SBA financial assistance.

Having considered the legal precedent and the Congressional mandate, SBA has determined that it may exclude small businesses engaging in lawful activities of an obscene, pornographic, or prurient sexual nature. Under the proposed rule, SBA would not provide financial assistance to small businesses which present live performances of a prurient sexual nature or which derive significant gross revenue from the sale, on a regular basis, of products or services, or the presentation of depictions or displays, of a pornographic, obscene, or prurient sexual nature. Thus, an establishment featuring nude dancing, or a book, magazine or video store containing merchandise of a prurient sexual nature would not be eligible for SBA financial assistance if the obscene, pornographic, or prurient activity contributed to the generation of a significant portion of the gross revenue of the business.

SBA considers this proposed rule to be consistent with its obligation to direct its limited resources and financial assistance to small businesses in ways which will best accomplish SBA's mission, serve its constituency, and serve the public interest. Applicants' First Amendment freedoms are in no way abridged. They may still express their views, exercise their freedoms, operate their businesses, and obtain any other aid available to them.

SBA is considering the use of a percentage of gross revenue instead of "significant" in the final formulation of this rule and requests commenters to focus particularly on the relative merits of the two approaches and what percentage would be appropriate.

Note 2. The proposed regulation establishes a new "Eligible Passive Company" rule replacing the current "alter ego" rule. The new rule will be found at § 120.111. An "Eligible Passive Company" is defined as an entity which does not engage in regular and continuous business activity, which leases real or personal property to an Operating Company for use in the Operating Company's operations. SBA generally makes business loans only to small businesses engaged in regular business activities, and prohibits such assistance to entities engaged in passive investment or real estate development, or which do not engage in regular and continuous activity as an operating business. SBA calls such entities "passive businesses." At the same time, SBA recognizes that valid business reasons may exist for an Operating Company not to own the real estate and fixed assets used to conduct its business. This proposed rule would allow certain passive businesses to be eligible for SBA assistance if that assistance is used only to acquire and/or improve real or personal property leased to a small business and is used in that small business' operations. The proposed rule would eliminate certain requirements and restrictions which presently limit the use of real estate holding entities in SBA's business-loan and development company programs.

For purposes of these regulations, an Operating Company is defined in section 120.100 as a small business actively currently involved in conducting business operations or about to be located on real property owned by an Eligible Passive Company, or using or about to use in its business operations, personal property owned by an Eligible Passive Company.

Many years ago, SBA agreed to assist eligible Operating Companies seeking SBA financial assistance through their affiliated "mirror image" passive businesses by creating an exception for such "alter egos". Subsequent modifications to the mirror image requirement permitted variations in ownership percentages between the operating business and the alter ego for immediate family members. Such variances led to conflicting interpretations of the policy, which have frustrated its original intent and confused both the public and SBA personnel. Such variances limited the effectiveness of the intended assistance. In addition, the variances caused inconsistencies between the 7(a) loan program and the development company loan program.

On February 22, 1994, SBA published (59 FR 8425) a proposed rule ("1994 proposal") to eliminate the conflicting interpretations and inconsistencies and to revise the family member common ownership threshold to extend the alter ego exception to additional passive businesses. SBA received more than twenty detailed comments suggesting changes in the proposal. It also has received many other suggestions and recommendations from small business owners, development companies, lending institutions and SBA employees at regulatory partnership meetings and other outreach activities conducted by SBA. After considering these comments and suggestions, SBA has revised its thinking sufficiently to

**EXHIBIT C**
Page 2

Federal Register / Vol. 60, No. 241 / Friday, December 15, 1995 / Proposed Rules          64375

~~operations personal property owned by a~~ Passive Company.

*Preference* is any arrangement giving a Lender or a CDC a preferred position compared to SBA relating to the making of a business loan with respect to such things as repayment, collateral, guarantees, control, maintainance of a compensating balance, purchase of a Certificate of deposit or acceptance of a separate or companion loan, without SBA's consent.

*Rural Area* is a political subdivision or unincorporated area in a non-metropolitan county (as defined by the Department of Agriculture), or, if in a metropolitan county, any such subdivision or area with a resident population under 20,000 which is designated by SBA as rural.

*Service Provider* is an entity that contracts with a Lender or CDC to perform management, marketing, legal or other services.

### Subpart A—Policies Applying to All Business Loans

### Eligibility Requirements

#### § 120.100 What are the basic requirements for all Borrowers?

To be an eligible Borrower for an SBA loan, a small business must:

(a) Be an operating business (except for loans to Passive Companies);
(b) Be organized for profit;
(c) Be located in the United States;
(d) Be small under the size requirements of Part 121 of this chapter (including affiliates). See subpart H of this part for the size standards of Part 121 of this chapter which apply only to 504 loans; and
(e) Must demonstrate a need for the desired credit.

#### § 120.101 Credit not available elsewhere.

SBA provides business loan assistance only to applicants for whom the desired credit is not otherwise available on reasonable terms from non-Federal sources. SBA requires the Lender or CDC to certify or otherwise show that the desired credit is unavailable to the applicant on reasonable terms and conditions from non-Federal sources without SBA assistance, taking into consideration the prevailing rates and terms in the community in or near where the applicant conducts business, for similar purposes and periods of time. Submission of an application to SBA by a Lender or CDC constitutes certification by the Lender or CDC that it has examined the availability of credit to the applicant, has based its certification upon that examination, and has ~~documentation in its file to support the~~ certification.

#### § 120.102 Funds not available from alternative sources, including personal resources of principals.

An applicant for a business loan must show that the desired funds are not available from the personal resources of the applicant's principals or other sources such as the sale of the applicant's assets or securities. SBA may require the use of personal resources before a loan will be granted, unless SBA determines that undue hardship would result or if the loan is to an employee trust.

#### § 120.103 Are farm enterprises eligible?

Federal financial assistance to agricultural enterprises is generally made by the United States Department of Agriculture (USDA), but may be made by SBA under the Memorandum of Understanding signed by SBA and USDA. Farm-related businesses are eligible businesses under SBA's business loan programs.

#### § 120.104 Are businesses financed by SBICs eligible?

SBA may make or guarantee loans to a business financed by an SBIC if SBA's collateral position will be superior to that of the SBIC. SBA may also make or guarantee a loan to an otherwise eligible small business which temporarily is owned or controlled by an SBIC under the regulations in part 107 of this chapter. SBA neither guarantees SBIC loans nor makes loans jointly with SBICs.

#### § 120.105 Special consideration for veterans.

SBA will give special consideration to a small business owned by a veteran or, if the veteran chooses not to apply, to a business owned or controlled by one of the veteran's dependents. If the veteran is deceased or permanently disabled, SBA will give special consideration to one survivor or dependent. SBA will process the application of a business owned or controlled by a veteran or dependent promptly, resolve close questions in the applicant's favor, and pay particular attention to maximum loan maturity. For SBA loans, a veteran is a person honorably discharged from active military service.

### Ineligible Businesses and Eligible Passive Companies

#### § 120.110 What businesses are ineligible for SBA business loans?

The following types of businesses are ineligible:

~~(a) Non-profit businesses (for-profit~~ subsidiaries are eligible);

(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances);

(c) Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under § 120.111);

(d) Life insurance companies;

(e) Businesses located in a foreign country (businesses in the U.S. owned by aliens may qualify);

(f) Pyramid sale distribution plans;

(g) Businesses deriving more than one-third of gross annual income from legal gambling activities);

(h) Businesses engaged in any illegal activity;

(i) Private clubs and businesses which limit the number of memberships for reasons other than capacity;

(j) Government-owned entities (except for businesses owned or controlled by a Native American tribe);

(k) Businesses principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs, whether in a religious or secular setting;

(l) Consumer and marketing cooperatives (producer cooperatives are eligible);

(m) Loan packagers earning 30 percent or more of their gross annual revenue from packaging SBA loans;

(n) Businesses with an Associate considered to have control under Part 121 who is incarcerated, on probation, on parole, or subject to pending felony charges;

(o) Businesses in which the Lender or CDC, or any of its Associates owns an equity interest (unless waived by SBA for good cause in the case of minor ownership interests);

(p) Businesses which:
(1) Present live performances of a prurient sexual nature; or
(2) Derive significant gross revenue through the sale of products or services, or the presentation of depictions or displays, of a prurient sexual nature;

(q) Unless waived by SBA for good cause, businesses that have previously defaulted on a Federal loan or Federally assisted financing, resulting in the Federal government or any of its agencies or Departments sustaining a loss in any of its programs, and businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted

**EXHIBIT C**
**Page 3**